**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

White Oak Property
Development, LLC,

        Plaintiff,

    v.                        Case No. 1:07cv595

Washington Township,            Judge Michael R. Barrett
Ohio, *et al.*,

        Defendants.

## <u>ORDER</u>

This matter is before the Court upon Defendants' Motion for Judgment on the

Pleadings (Doc. 8); Plaintiff's First Motion for Summary Judgment (Doc. 22); Plaintiff's

Second Motion for Partial Summary Judgment (Doc. 44); and Defendants' Motion for

Summary Judgment (Doc. 51). These motions have been fully briefed.

## I.    <u>BACKGROUND</u>

Plaintiff White Oak Property Development, LLC is the owner of a 60-acre tract of

land ("Property") in Washington Township ("Township"), which is surrounded by a separate

160-acre tract of land that includes an 18-hole golf course ("Golf Course"). (Doc. 44, Ex.

A, Chris Johns Aff. ¶ 3.) White Oak acquired the Property and the Golf Course from the

previous owner, Donald Schroer. (Id., ¶ 4.)[1] Schroer had negotiated a Tax Increment

---

[1]Defendants point out that the sales transaction was actually between a third-party,
White Oak Golf Enterprises, LLC, and Play-A-Round, LLC. (Donald Schroer Depo. at 6)
Ownership of the Property was not transferred to White Oak until June 28, 2007. (Doc. 51, Ex.
E)

Financing agreement ("TIF Agreement") with Township officials which would have allowed him to construct approximately 94 residences on the Property. (Doc. 1, Exs. A, B.)

The Washington Township Zoning Resolution sets forth four districts: (1) Agricultural; (2) Residential; (3) Commercial; (4) Industrial. (Johns Aff., Ex. 2) The Property is zoned Residential "R" District. (Johns Aff., ¶ 5.) The Zoning Resolution describes this type of property as follows:

Section 2. RESIDENTIAL "R" DISTRICT

A.    PERMITTED USES

1.    One (1) Single Family Dwelling subject to lot size requirements, dwelling size requirements, and all other requirements as set forth herein.

2.    Home occupations.

3.    Storage and or/salvage [sic] of no more than two (2) vehicles that re [sic] unlicensed, disabled, outside of an enclosed building, and visible from the road or from adjacent residential dwellings. Farm Machinery is excluded.

4.    Accessory buildings and uses customarily incident to any of the above permitted uses.

B.    USES PROHIBITED

1.    Any other use not specifically permitted in this section.

(Id., Ex. 2.)

On March 15, 2007, White Oak delivered a development plan to the Washington Township Planning Commission which proposed a residential condominium development on the Property ("the Proposal"). (Wills Depo., Ex. 6) The Proposal called for a Planned Unit Development ("PUD") and included 280 to 300 multi-family units. (Id.) At 300 units,

the Proposal equated to a density of five units per acre.  (Johns Aff., ¶ 7.)  The prices of the units would start in the low $200,000 range.  (Id., ¶ 6.)

On March 26, 2007, White Oak presented the Proposal to the Washington Township Trustees during a regular meeting.  Defendants Janie Wills and Alan Hanselman were both Trustees at the time.  Wills asked whether the development was going to be "Section 8 or low income housing."  (Doc. 39, Janie Wills Depo. at 140.)

On March 28, 2007, White Oak presented the Proposal to the Washington Township Zoning Commission.  (Danny Bolender Depo. at 16-17.)  Danny Bolendar, the Chairman of the Zoning Commission, drafted and distributed a letter to residents claiming that the Zoning Commission had recommended denial of the development, and that the residents should urge the Trustees to deny it as well.  (Id. at 20-22; Ex. 40.)  Bolender specifically distributed the letter to those residents living directly adjacent to the Property, on Wardlow Road and Shroufe Road in Washington Township. (Id. at 20.)  Bolender himself owns property on Wardlow Road.  (Id. at 10-11.)

In a letter dated May 7, 2007, the Trustees and the Zoning Commission denied the Proposal.  (Johns Aff., Ex. 1.)  The denial was based on the Intensity of Use provision in the Zoning Resolution, which states:

SECTION 5. INTENSITY OF USE

LOT SIZE

-    Every lot districted as commercial or Industrial shall have a minimum of three (3) acres.

-    Every lot districted as Residential shall have a minimum of three (3) acres if the dwelling is connected to an on-site sewage disposal system, or a minimum of one (1) acre if the dwelling is connected to a public sanitary sewer system.

(Id., Ex. 2.)  The letter states: "[s]ince your proposed development plan does not conform to the Washington Township Zoning Regulations, it cannot be approved as it is now set forth.  If you wish to submit a revised plan that does not violate the Washington Township Zoning Regulations, please do so."  (Id., Ex. 1.)

On May 21, 2007, White Oak attended another Trustee meeting and protested the denial.  (Doc. 25-2, Chris Johns Aff. (9/9/08), Ex. 1.)  White Oak challenged the Defendants' interpretation of the Zoning Resolution, arguing that the Intensity of Use provision did not support Defendants' denial of the proposed development.  (Id.)  White Oak argued that the Intensity of Use provision does not prohibit multi-unit dwellings, as long as each dwelling sits on one or three acres, depending on its sewer.  (Id.)  White Oak pointed out that definition of "dwelling" in the Zoning Resolution includes multiple family dwellings:

> DWELLING – Any structure, or portion thereof occupied or intended to be occupied exclusively for residential purposes.
>
> > - SINGLE FAMILY DWELLING – A detached, independently standing structure occupied or intended to be occupied exclusively for residential purposes by one (1) family or housekeeping unit.
> >
> > - MULTIPLE FAMILY DWELLING – A detached, independently standing structure occupied or intended to be occupied exclusively for residential purposes by more than one (1) family or housekeeping unit.

(Id.)  As such, White Oak argued that the Intensity of Use provision imposes no limitations on the number of units that can be included in a dwelling.  (Id.)

On June 11, 2007, the Trustees held another meeting.  (Wills Depo., Ex. 11) During the meeting the Trustees voted to close Shroufe Road "from the Luke property on

back." (Id.) This action would effectively eliminate access to the Property because Shroufe Road dead-ends into the Property, and the "Luke property" is the last property before the Property on Shroufe Road. (Johns Aff., ¶ 10.)

On June 25, 2007, the Trustees voted to pass Resolution 13-2007, which asks the Brown County Commissioners to vacate Shroufe Road at the 1,438 mark. (Doc. 1, Ex G.) The Brown County Commissioners subsequently denied the request. (Johns Aff. ¶¶ 14-16.)

On July 23, 2007, the Trustees voted to rescind the TIF Agreement. ( Ex. 14.) The vote came following a motion by Bolendar, who was in the audience. Defendants maintain that the TIF Agreement was rescinded because the original developer was required to provide the Township with an unconditional, irrevocable letter of credit, but no letter of credit was ever issued. (Janie Wills Depo. at 11.) White Oak maintains that Bolendar met secretly with Wills and Hanselman and discussed rescinding the TIF. Wills and Hanselman deny that these meetings took place. (Janie Wills Depo. at 59; Alan Hanselman Depo. at 22.)

White Oak brings its claims pursuant to 42 U.S.C. § 1983, the Fair Housing Act, § 801 *et seq.*, 42 U.S.C.A. § 3601 *et seq.*, and Ohio law. White Oak claims: (1) the Zoning Resolution is unconstitutional on its face; (2) Defendants have violated the Fair Housing Act; (3) Defendants violated its substantive and procedural due process rights; (4) the Township has violated Ohio law by acting outside its statutory authority; (5) Defendants engaged in a civil conspiracy in violation of Ohio and federal law; (6) Wills and Hanselman have publicized matters which place White Oak in a false light; and (7) Wills and Hanselman have defamed White Oak. White Oak also seeks a declaration that the Zoning

Resolution is unconstitutional on its face.

Subsequently, the parties filed a Stipulation of Partial Dismissal of Claims (Doc. 68) in which the parties dismissed White Oak's claims for false light invasion of privacy and defamation without prejudice.

## II.    ANALYSIS

### A.    Standard of Review

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) attacks the sufficiency of the pleadings and is evaluated under the same standard as a motion to dismiss. *Thomas v. Gee*, 850 F.Supp. 665, 668 (S.D. Ohio 1994), *citing*, *Amersbach v. City of Cleveland*, 598 F.2d 1033, 1038 (6th Cir. 1979). In ruling upon such motion, the Court must accept as true all well-pleaded material allegations of the pleadings of the opposing party, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment. *Id.*, *citing Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973); *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). However, if a party relies on matters outside the pleadings, the court will treat the motion as one filed under Rule 56. *See* Fed.R.Civ.P. 12(c) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment. . . ."). Given the procedural posture of the pending motions, the Court will treat Defendants' Motion for Judgment on the Pleadings as one for summary judgment.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed.R.Civ.P. 56(c).  The moving party has the burden of showing an absence of evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).   Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252.

### B. Void-for-Vagueness Challenge

White Oak argues that the Zoning Resolution is unconstitutionally vague on its face. White Oak claims that the provisions of the Zoning Resolution are incompatible, inconsistent, and irreconcilable.  White Oak also claims that the Zoning Resolution fails to set out a comprehensible application and approval process for residential development. White Oak claims that as a result, Township officials are given unbounded discretion to pick and choose which development they will allow and which they will disallow. Defendants respond that White Oak cannot maintain a facial challenge where First Amendment interests are not threatened.

The Due Process Clauses of the Fifth and Fourteenth Amendments provide the constitutional foundation for the void-for-vagueness doctrine. *Belle Maer Harbor v. Charter Tp. of Harrison*, 170 F.3d 553, 556 (6th Cir.1999).  "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  The Supreme Court has explained that

vague laws "offend several important values." *Id.* First, laws must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Id.* Second, laws must provide "explicit standards for those who apply them." *Id.* As the Supreme Court has explained: "vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Id.* Finally, "where a vague statute 'abut(s) upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of (those) freedoms.'" *Id.*, *quoting Baggett v. Bullitt*, 377 U.S. 360, 372 (1964).[2]

The Sixth Circuit has outlined the principles to be applied in a void-for-vagueness challenge:

> In examining a facial challenge, this court must first "determine whether the enactment reaches a substantial amount of constitutionally protected conduct." Where the enactment does not reach constitutionally protected conduct, the complainant may succeed in a vagueness claim "only if the enactment is impermissibly vague in all of its applications." Therefore, vagueness claims not involving First Amendment freedoms must be examined in light of the facts of the particular case at hand and not as to the statute's facial validity. However, even in cases not involving First Amendment rights, we have recognized that courts may engage in a facial analysis where the enactment imposes criminal sanctions.

*Id.* at 557 (citations omitted). White Oak's challenge does not involve First Amendment freedoms. However, the Zoning Resolution does include penalties. Section 5 provides:

---

[2]The Court notes that it could decline to reach the merits of White Oak's vagueness challenge and invoke the abstention doctrine pending a state court or enforcement agency construction of the Zoning Resolution. *See Railroad Commission of Texas v. Pullman*, 312 U.S. 496, 61 (1941) ("public interest [in] . . . the avoidance of needless friction" between federal courts and state policies). However, the parties have not alerted the Court to any state court challenges in this matter, and Defendants have not requested that the Court abstain from reaching the merits.

It shall be a violation of this Resolution to locate, erect, construct, change or use any building or land contrary to the provisions of this Resolution . . . . Any person, firm, corporation or other legal entity violating any provision or regulation of this Resolution . . . shall be deemed guilty of a misdemeanor and, upon conviction thereof, be fined not more than one hundred dollars ($100.00). Each and every day such violation continues may be deemed a separate offense.

Because the Zoning Resolution includes criminal penalties for its violation, this Court must examine the Zoning Resolution on its face to determine whether it lacks sufficient definiteness to meet the requirements of the Due Process Clause. *See Belle Maer Harbor*, 170 F.3d at 557, *citing Springfield Armory, Inc. v. City of Columbus*, 29 F.3d 250, 254 (6th Cir. 1994).

"To withstand a facial challenge, an enactment must define the proscribed behavior with sufficient particularity to provide a person of ordinary intelligence with reasonable notice of prohibited conduct and to encourage non-arbitrary enforcement of the provision". *Id.*, *citing Kolender v. Lawson*, 461 U.S. 352, 357 (1983). White Oak's criticism of the Zoning Resolution stems from the language found in the Intensity of Use provision, which only references "dwelling." White Oak points out that a "dwelling" is defined as both a single family dwelling and multiple family dwelling. White Oak maintains that the Intensity of Use provision therefore supports its position that the Zoning Resolution permits a series of multiple-unit buildings on property that is at least one acre if it is attached to a public sewer system, or at least three acres if it has an on-site disposal system. White Oak explains the ambiguity is created by Defendants' interpretation of the Intensity of Use provision. However, White Oak cannot rest its facial challenge on Defendants' interpretation of the provision.

White Oak also argues that there is an internal ambiguity because the Intensity of

Use provision conflicts with the Residential "R" District provision. However, the Court finds that the Zoning Resolution defines the proscribed behavior with sufficient particularity. The Residential "R" District provision clearly limits permitted uses to "One (1) Single Family Dwelling." This provision also states that prohibited uses are "[a]ny other use not specifically permitted in this section." As such, a person of ordinary intelligence would have reasonable notice that multiple family dwellings are not permitted in a Residential "R" District. The Intensity of Use provision merely modifies the Residential "R" District, as well as the other types of Districts. Therefore, the Court finds that while the Intensity of Use provision may be inexact because it only refers to "dwelling" and the only type of dwelling permitted under the Zoning Resolution are single family dwellings, it is not ambiguous in the constitutional sense.

Nor has White Oak pointed the Court to a provision in the Zoning Resolution which encourages arbitrary enforcement of the provision. The limit of one single family dwelling is objective and does not permit ad hoc, discriminatory enforcement of the Zoning Resolution. Therefore, the Intensity of Use provision is not void for vagueness.

White Oak also takes issue with the perceived lack of guidance as to when a property owner must apply for a Zoning Construction Certificate or an "application for Development." The Zoning Resolution provides that "[a]ll new dwellings" require a Zoning Construction Certificate. The Zoning Resolution also provides a procedure for obtaining a Zoning Construction Certificate:

1.      Applications for Zoning Construction Certificates are obtained from the Zoning Inspector or his designee.

2.      Every application shall be accompanied by a sketch or drawing indicating the location of all buildings and structures to be erected in

relations to all property lines, street lines and right-of-ways. For applications involving dwellings, the sketch or drawing must also indicate the location of flood plains.

3.      Every application shall include the proper sewer or septic permit, as applicable, and that permit will be verified by the Zoning Inspector with the appropriate agency.

4.      Within ten (10) days after receipt of an application, the Zoning Inspector shall either approve or disapprove the application in conformance with the provisions of this Resolution.

. . .

6.      Zoning Construction Certificates shall be issued only in conformity with the provisions of this Resolution unless the Zoning Inspector receives written order from the Board of Zoning Appeals deciding an appeal, conditional use or variance.

 . . .

(Johns Aff., Ex. 2)

Regarding Developments, the Zoning Resolution provides:

G.      DEVELOPMENTS

Commencing with the effective date of this amendment, Land divided from the original Lot of Record into three or more lots for the development of dwellings will be considered a Development.

- A Development must be platted (accurate site layout or "paper survey") before an application for Development is filed with the Zoning Inspector.

- If the Board of Trustees approves the application for Development, the Development (as defined in the application) may proceed.

- The lots (per the application) must be surveyed and recorded, and the comparison of the recorded lots with those described in the application approved by the Board of Trustees, prior to zoning certificates or zoning redistrict changes being issued or approved.

- If there are declared roads in the application, then those roads must be built (to minimum County standards for public transportation) and their construction approved by the Board of Trustees prior to zoning certificates or zoning district changes being issued or approved for the

lots fronting those roads.

(Johns Aff., Ex. 2)  The Zoning Resolution does not provide any further guidance regarding the "application for Development."

While the Zoning Resolution does not provide for the timing of an application, it does provide that "all new dwellings" require a zoning construction certificate.  While presumably, a property owner could apply for a certificate after the completion of the dwelling, the property owner would do so at the peril of constructing a building which violates the Zoning Resolution.  Therefore, the Court finds that the application procedures in the Zoning Resolution are not void for vagueness because they do not mandate the timing for an application.

Accordingly, White Oak is not entitled to summary judgment on its void-for-vagueness claim, and Defendants are entitled to dismissal of this claim.

### C.    Fair Housing Act

The Fair Housing Act makes it unlawful to "otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin."  42 U.S.C. § 3604(b).  Congress intended for the FHA to apply to zoning ordinances.  *See Larkin v. State of Mich. Dep't of Soc. Servs.*, 89 F.3d 285, 289 (6th Cir. 1996) (discussing explicit intent of Congress to have the FHAA apply to zoning laws which would restrict placement of group homes for people with disabilities).  However, "the FHA does not pre-empt or abolish a municipality's power to regulate land use and pass zoning laws."  *Jeffrey O. v. City of Boca Raton*, 511 F.Supp.2d 1339, 1349 (S.D.Fla. 2007), *citing Hemisphere Bldg. Co., Inc. v. Vill. of Richton Park*, 171 F.3d 437, 440 (7th Cir.1999) (explaining that "it would be absurd to think that the FHAA overrides all local regulation of

home construction."); *Bryant Woods Inn, Inc. v. Howard County, Md.*, 124 F.3d 597, 603 (4th Cir. 1997) (explaining that "[i]n enacting the FHA, Congress clearly did not contemplate abandoning the deference that courts have traditionally shown to such local zoning codes.").

White Oak claims that Defendants violated the FHA by rejecting its Proposal. Defendants argue that White Oak has no standing to bring this claim because it did not own the property in question at the time it submitted the Proposal. Defendants argue further that even if White Oak has standing, its FHA claim cannot withstand summary judgment.

## 1. Standing under the FHA

To have standing under the FHA, a plaintiff need show only that he or she (1) has suffered an injury in fact (2) that is causally connected to the defendants' conduct and (3) that is likely to be redressed by a favorable ruling. *Hamad v. Woodcrest Condominium Ass'n*, 328 F.3d 224, 230-31 (6th Cir. 2003).

The Court finds that White Oak has sufficiently demonstrated an injury in fact. While White Oak has not specifically articulated an injury in fact, Defendants do not dispute that the denial of the Proposal has prevented White Oak from proceeding with its development plans and that White Oak expended resources in developing its Proposal. There is also no dispute that White Oak's injury is not causally connected to Defendants' conduct, or would not be redressed by a favorable ruling. Defendants' only basis for arguing that standing is lacking is White Oak's lack of ownership of the Property. However, courts have not required the plaintiff to show ownership of the property at issue to have standing to bring a FHA claim. *See*, *e.g.*, *Blue Water Financial Co. v. City of Lansing*, 1998

WL 278187, *4 (W.D.Mich. March 10,1998) (unpublished) (finding real estate developer seeking to purchase property for construction of a low-income housing project has standing under FHA to assert rights of its prospective minority tenants); *Housing Investors, Inc. v.. City of Clanton*, 68 F.Supp.2d 1287, 1294 (M.D.Ala. 1999) (would-be real estate developer has standing to sue under FHA to challenge zoning decision denying permission to build housing for low-income families).

## 2.    Merits of FHA claim

The Sixth Circuit has explained that a plaintiff can establish a violation of the FHA by showing either disparate treatment or disparate impact. *Larkin v. Mich. Dep't of Soc. Servs*., 89 F.3d 285, 289 (6th Cir. 1996).[3]   A discriminatory effect or "disparate impact" case involves a facially neutral policy or practice which has the effect of discriminating against a particular protected group. *Blaz v. Barberton Garden Apartment*, 1992 WL 180180, *3 (6th Cir. July 29,1992) (unpublished).   A discriminatory intent or "disparate treatment" case involves an individual claim of differential treatment based upon a forbidden characteristic such as race, sex or familial status. *Id.*   White Oak is proceeding on a disparate-treatment theory.[4]

In analyzing disparate-treatment cases under the FHA, the Sixth Circuit has directed courts to apply the three-part burden of proof test established in *McDonnell Douglas Corp.*

---

[3]In *Larkin*, the Sixth Circuit recognized that some courts recognize a third type of case where the challenged practice discriminates on its face.  However, the court views such facially discriminatory actions as "just a type of intentional discrimination or disparate treatment, and should be treated as such." 89 F.3d at 289.  Therefore, any claim White Oak has brought based on a facial challenge under the FHA will be analyzed as a disparate treatment claim.

[4]Defendants argue that White Oak did not plead their claim as such in the Complaint.

*v. Green*, 411 U.S. 792 (1973). *Graoch Associates # 33, L.P. v. Louisville/Jefferson County Metro Human Relations Com'n*, 508 F.3d 366, 371 (6th Cir. 2007), *citing Selden Apartments v. U.S. Dep't of Housing & Urban Dev.*, 785 F.2d 152, 159 (6th Cir. 1986).[5] Accordingly, a plaintiff must first state a *prima facie* case by showing that "he is a member of a protected class, that he applied to and was qualified to rent or purchase certain housing, that he was rejected, and that the housing remained available thereafter. *Id.*, *citing Maki v. Laakko*, 88 F.3d 361, 364 (6th Cir. 1996). However, this *prima facie* case was " 'never intended to be rigid, mechanized, or ritualistic.' " *Selden Apartments*, 785 F.2d at 161, *quoting United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715, (1983). For example, in *Michigan Protection and Advocacy Service, Inc. v. Babin*, the Sixth Circuit formulated the *prima facie* case as follows:

> (1) they were a member of a protected class; (2) they attempted to engage in a "real estate-related transaction" with [the defendants], and met all relevant qualifications for doing so; (3) [the defendants] refused to transact business with the plaintiffs despite their qualifications; and (4) the defendants continued to engage in that type of transaction with other parties with similar qualifications.

18 F.3d 337, 346 (6th Cir. 1994), *quoting Secretary, United States Dept. of Housing & Urban Develop. ex rel. Herron v. Blackwell*, 908 F.2d 864, 870 (11th Cir. 1990).

The Court finds that White Oak has not stated a *prima facie* case of disparate treatment under the FHA. As evidence of Defendants' discriminatory intent, White Oak points to a statement by one of the Trustees, Janie Wills, during the March 26, 2007 Trustee meeting that White Oak was proposing a "low-income, Section 8, subsidized"

---

[5]The parties have failed to apply this specific framework in their briefs, which makes the analysis difficult

housing project. The Court notes that White Oak does not contend that it *actually* was intending to provide low-cost housing as part of the Proposal. However, the Court finds that this is not fatal to their claim. The FHA prohibits a broad spectrum of discriminatory housing practices. *See*, *e.g.*, 42 U.S.C. § 3604 (c) (making it illegal "[t]o make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination."). The Supreme Court has instructed courts to give the "broad and inclusive" language of the FHA a "generous construction" to effectuate its remedial purpose. *Graoch*, 508 F.3d 366, 390 (Merritt, J., concurring), *quoting Trafficante v. Metro. Life Ins. Co.*,409 U.S. 205, 209 (1972).

However, the mere reference to low-cost housing does not necessarily bring Wills' statement withing the FHA's prohibitions. The FHA itself does not ban discrimination based on income. The parties have only assumed, based on cases discussing discriminatory impact, that land-use decisions concerning low-cost housing would be covered by the FHA. Moreover, White Oak has not shown that it met all relevant qualifications under the Zoning Resolution. Defendants denied White Oak's Proposal because it did not meet the requirements of the Zoning Resolution. While that decision may form the basis of a discriminatory impact claim, White Oak has rejected the notion that it is bringing such a claim under the FHA. Finally, White Oak has not pointed to other parties who have had their development plans with multiple-family dwellings approved by the Township.

Even if the Court accepts White Oak's evidence as satisfying its *prima facie* burden, Defendants may then articulate a legitimate non-discriminatory basis for its challenged decision. *Graoch Associates*, 508 F.3d at 371, *citing Selden Apartments*, 785 F.2d at 160. If the Defendants do proffer such a basis, White Oak must establish that the articulated reason is pretextual. *Id.* The burden of persuasion always remains with the plaintiff. *Id.*

Presumably, Defendants' legitimate non-discriminatory basis for denying the Proposal is that the Proposal did not meet the requirements in the Zoning Resolution. In analogous employment discrimination cases, pretext is shown by showing either that: (1) the proffered reason had no basis in fact, (2) the proffered reason did not actually motivate the adverse action, or (3) the proffered reason was insufficient to motivate the adverse action. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

White Oak has not carried its burden in establishing that this articulated reason is pretextual. White Oak's Proposal clearly included multiple-family dwellings, which is not a permitted use in the Residential "R" District. This is an objective basis to reject the Proposal. *Cf. Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032, 1040 (2d Cir. 1979) (cautioning district courts to carefully scrutinize suggested reasons that are not objective in nature). Moreover, Wills has testified that her question during the March 26th meeting was in response to the concerns of some residents:

> Q:      . . . And what is your concern, Janie, with Section 8 or low income
> housing?
>
> A:     I don't have an actual concern with it. I had been asked by residents
> if that's what this was going to be and that's why I asked the question.

(Wills Depo. at 139.)

Accordingly, the Court finds that Defendants are entitled to summary judgment on

White Oak's FHA claim.[6]

## D.   Due Process

The Due Process Clause of the Fourteenth Amendment provides that no state "shall deprive any person of life, liberty or property, without due process of law."  There are two types of due process: substantive and procedural.  White Oak alleges violations of both.

### 1.   Substantive Due Process

White Oak claims that Defendants violated its substantive due process rights through arbitrary and irrational zoning decisions that do not bear a rational relationship to a legitimate government interest.[7]  In addition to this "as applied" challenge, White Oak also brings a facial challenge to the Zoning Resolution.  However, before addressing the merits of either of these claims, the Court must address the issue of standing and whether White Oak was required to plead and prove inadequacy of state remedies.

#### a.   Standing

Defendants argue that White Oak lacks standing to bring its substantive due process claim.  Defendants explain that it only denied the Proposal submitted by White Oak Golf Course Enterprises, LLC.  Defendants point out that White Oak did not assume ownership of the Property until after the denial of the Proposal.  White Oak points out that it submitted the proposal as the developer.  The Supreme Court has held that a developer has constitutional standing to assert its own "right to be free of arbitrary or irrational zoning actions."  *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 263

---

[6]White Oak did not move for summary judgment on this claim.

[7]Defendants note that in White Oak's Complaint, the substantive due process claim is not asserted against Wills or Hanselman.  White Oak does not argue to the contrary.

(1977); *see also Sadowski v. Village of Mantua*, 1994 WL 6808, *1 (6th Cir. Jan. 10,1994) (unpublished) (developer has standing to challenge denial of permits on substantive due process grounds even though he did not own title to the property).  Therefore, the Court finds White Oak has standing to bring its substantive due process claim.

### b.    Inadequacy of state processes

In its Response to White Oak's Motion for Summary Judgment, Defendants argued that White Oak has failed to plead and prove the inadequacy of state or administrative processes and remedies to redress its due process violations.  While the Sixth Circuit has not always been entirely clear about when a plaintiff must plead and prove the inadequacy of state processes, *see Mitchell v. Fankhauser*, 375 F.3d 477, 482 (6th Cir. 2004), there has never been any indication that this requirement applies to *substantive* due process claims, as opposed to *procedural* due process claims.  Therefore, the Court concludes that White Oak can proceed with its substantive due process claim.

### c.    Facial challenge

A zoning ordinance may be challenged as violative of substantive due process either on its face or as applied to a particular parcel of land.  *Richardson v. Township of Brady*, 218 F.3d 508, 513 (6th Cir. 2000), *citing Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992).  When a landowner makes a facial challenge to a zoning ordinance, "he or she argues that any application of the ordinance is unconstitutional." *Id.*, *citing WMX Technologies, Inc. v. Gasconade County*, 105 F.3d 1195, 1198-99 n.1 (8th Cir. 1997).  A local zoning ordinance survives a substantive due process challenge if there exists a rational relationship between the terms of the ordinance and a legitimate governmental purpose.  *Id.*, *citing Berger v. City of Mayfield Heights*, 154 F.3d 621, 624 (6th Cir. 1998).

White Oak argues that a blanket prohibition on all multiple-family housing is unconstitutional.  However, in *Village of Belle Terre v. Boraas* the Supreme Court upheld a zoning ordinance which restricted the use of land to "one-family" dwellings.[8] As the Supreme Court explained:

> A quiet place where yards are wide, people few, and motor vehicles restricted are legitimate guidelines in a land-use project addressed to family needs.  This goal is a permissible one within *Berman v. Parker*, [348 U.S. 26 (1954)]. The police power is not confined to elimination of filth, stench, and unhealthy places.  It is ample to lay out zones where family values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people.

416 U.S. 1, 9 (1974); *see also Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977) (denial of building permit for multi-family low income housing in accordance with rational zoning scheme).

Defendants point out that Article I, § 4 of the Zoning Resolution provides that one of the purposes of the Zoning Resolution is to make the community "more attractive by assisting in the preservation of open space, unique natural resources, and natural terrain features."  Based on the Supreme Court's decision in *Belle Terre*, this is a legitimate government purpose.  The Court finds that limiting the Residential "R" District to single-family dwellings bears a rational relationship to this purpose.  The Court must defer to this legislative enactment.  *See Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 388 (1926) (explaining that "[i]f the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control.")

---

[8]The Court concluded that the municipality's definition of a "family" (no more than two unrelated persons) did not burden any fundamental right guaranteed by the Constitution. 416 U.S. at 7.

Therefore, White Oak is not entitled to summary judgment on its facial substantive due process challenge, but Defendants are entitled to dismissal of this claim.

### c.    As-applied challenge

The Sixth Circuit has recognized that "citizens have a substantive due process right not to be subjected to arbitrary or irrational zoning decisions." *Richardson v. Township of Brady*, 218 F.3d 508, 512 (6th Cir. 2000), *citing Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1217 (6th Cir. 1992). "A local zoning ordinance survives a substantive due process challenge if there exists a rational relationship between the terms of the ordinance and a legitimate governmental purpose." *Id.* at 513.

"To state a substantive due process claim in the context of zoning regulations, a plaintiff must establish that (1) a constitutionally protected property or liberty interest exists, and (2) the constitutionally protected interest has been deprived through arbitrary and capricious action." *Braun v. Ann Arbor Charter Tp.*, 519 F.3d 564, 573 (6th Cir. 2008), *quoting Tri-Corp Mgmt. Co. v. Praznik*, 2002 WL 486241, *5 (6th Cir. March 29, 2002) (unpublished).

White Oak claims that it was Defendants' decision to deny its Proposal which violated its substantive due process. Therefore, White Oak must demonstrate that it had a property interest in the use of the Property as a multi-family housing development.

In *Silver v. Franklin Tp. Bd. of Zoning Appeals*, 966 F.2d 1031 (6th Cir. 1992), the plaintiff alleged that a zoning board's denial of a conditional zoning certificate violated his substantive due process rights. *Id.* at 1033. The Sixth Circuit explained that before the plaintiff could establish a violation of substantive due process, he must demonstrate that he had a property interest in the use of the undeveloped parcel as a condominium

complex.  *Id.* at 1036.  The Sixth Circuit explained that to do this, the plaintiff must prove

that the board of zoning appeals did not have the discretion to deny the plaintiff's use of

the land as a condominium complex if he "complied with certain minimum, mandatory

requirements."  *Id.*, *citing G.M. Engineers and Assoc., Inc., v. West Bloomfield Township*,

922 F.2d 328, 331 (6th Cir. 1990).  The court explained:

> If the Board had the discretion to deny Silver a conditional zoning certificate
> for a condominium complex even if he complied with certain minimum,
> mandatory requirements, then Silver would not have a "legitimate claim of
> entitlement" or a "justifiable expectation" in the approval of his plan.  Silver,
> therefore, would have no property right.  On the other hand, if state law
> circumscribed the discretion of the Board members to such an extent that
> approval of the particular use was mandatory once Silver met certain minimal
> requirements, then a property interest could exist.

*Id.* (citations omitted); *see also Richardson v. Township of Brady*, 218 F.3d 508, 516 (6th

Cir. 2000) ("[a]n abstract need or unilateral expectation does not suffice to create a

property interest.").

Under the Zoning Resolution, the minimum, mandatory requirement for obtaining

a Zoning Construction Certificate is the application, which included certain drawings,

sketches, and permits.  White Oak admits that it never applied for a Zoning Construction

Certificate.  (Chris Johns Depo. at 68)  However, White Oak argues that it nevertheless

satisfied any requirements to have its Proposal approved.

The procedure for obtaining a Zoning Construction Certificate was outlined above.

The application for a Zoning Construction Certificate is to be obtained from the Zoning

Inspector.  As the Zoning Resolution explains in Article VI, §1:

> The Zoning Inspector is a key individual in the zoning process.  . . . The
> Zoning Inspector serves several roles in zoning administration.   The
> inspector is a liaison between the Zoning Commission, Board of Zoning
> Appeals and the legislative body, and educator that conveys interpretation

of the code to the public, and a legal officer to enforce zoning codes. However, the Zoning Inspector is an administrative position with no discretionary authority. . . .

The Zoning Resolution further provides in Article VIII, §2.A that the Board of Zoning Appeals "shall have the power to hear and decide appeals . . . where it is alleged by the appellant that there is error in any order, requirement, decision, grant or refusal made by the Zoning Inspector or other official in the interpretation or of the provisions of this Resolution." Under Ohio law, the Board Zoning Appeals may:

> (B) Authorize, upon appeal, in specific cases, such variance from the terms of the zoning resolution as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the resolution will result in unnecessary hardship, and so that the spirit of the resolution shall be observed and substantial justice done;
>
> . . .
>
> In exercising the above-mentioned powers, the board may, in conformity with such sections, reverse or affirm, wholly or partly, or may modify the order, requirement, decision, or determination appealed from, and may make such order, requirement, decision, or determination as ought to be made, and to that end has all powers of the officer from whom the appeal is taken.

Ohio Revised Code § 519.14. Article VII, §2.D of the Zoning Resolution mimics this language. Based on these provisions, the Court concludes that if White Oak had submitted an application for a Zoning Certificate, ultimately the Board of Zoning Appeals would have had the discretion to order a variance from the single family dwelling limitation in Article V, §2.A.

If White Oak had instead applied to the Township Zoning Commission for an amendment or supplement to the Zoning Resolution pursuant to Article IX, §1 of the

Resolution, then the procedures in Ohio Revised Code § 519.12 would apply.[9]  Under section 519.12, the township zoning commission itself does not have the power to grant the application because the legislative action of amending a zoning classification can only be taken by the township board of trustees.  *Stile v. Copley Tp., Ohio* ,115 F.Supp.2d 854, 865 (N.D.Ohio 2000).  Instead, after following the procedures found in section 519.12, the township zoning commission makes recommendations to the board of trustees, which the trustees may then either adopt or deny, or adopt some modification of them.

Therefore, the Court finds that even if White Oak had completed the above requirements and met the minimum, mandatory requirements for obtaining a Zoning Construction Certificate, a variance, or an amendment to the Zoning Resolution, the Board of Zoning Appeals or the Trustees retained the discretion to deny White Oak's requested land use.

Therefore, the Court concludes that White Oak did not have a protected property interest because there was not a "legitimate claim of entitlement" to use the Property for a multiple-family dwelling development, or a "justifiable expectation" that Defendants would approve White Oak's desired land use.  The Court finds that the instant case is distinguishable from the Sixth Circuit's decision in *Buckeye Community Hope Foundation v. City of Cuyahoga Falls*, 263 F.3d 627 (6th Cir. 2001), *overruled on other grounds by* 538 U.S. 188 (2003).  In that case, the Sixth Circuit found that the plaintiffs had a property interest in zoning permits where the city initially approved their zoning application after having concluded that the site plan conformed with the existing zoning regulations.  *Id.* at

---

[9]It is not clear from the Record whether such an "application" was ever made.  White Oak did present its Proposal to the Zoning Commission on March 28, 2007.

642. The alleged due process violation was based upon the defendants' use of a referendum to deny the plaintiffs the benefit of their lawfully approved site plan. *Id.* In contrast, no part of White Oak's Proposal was ever approved by Defendants, and therefore *Buckeye Community* is inapplicable. *Accord J.D. Partnership v. Berlin Tp. Bd. of Trustees*, 412 F.Supp.2d 772, 780 & n.6 (S.D.Ohio 2005) (finding no substantive due process violation where the defendants had never approved the plaintiff's application for re-zoning).

The Court also finds that White Oak did not have a protected property interest in any re-zoning of its property to a PUD zoning district in the future.[10] *Accord Braun*, 519 F.3d at 574 (finding "plaintiffs do not appear to have a protected property interest in a future, rezoned use of property for a trailer park"). There is no dispute that the Zoning Ordinance did not provide for PUD zoning, and the Township was not required to provide for PUD zoning even if White Oak had made such a request. *See* Ohio Rev. Code § 519.021 ("Planned-unit developments *may be* included in the township zoning resolution under one of the following procedures: . . . (B) Upon the application of property owners . . .") (emphasis added).

Based on a similar rationale, the Court finds that White Oak did not have a property interest in the TIF Agreement. As the Supreme Court of Ohio has explained:

> Tax increment financing (TIF) is a method for funding public improvements in an area slated for redevelopment by recapturing, for a time, all or a portion of the increased property tax revenue that may result if the redevelopment stimulates private reinvestment. For example, a local government may redevelop the area surrounding a public square, installing public improvements like fountains, benches, statutory [ sic] or a parking garage

---

[10]White Oak disavows any claim based upon Defendants' refusal to adopt PUD regulations. Nevertheless, the Court has addressed this potential claim because it was argued by the parties.

and financing their installation with the recaptured tax increment.

*Princeton City School Dist. Bd. of Edn. v. Zaino*, 760 N.E.2d 375, 378 (Ohio 2002), *quoting* Meck & Pearlman, Ohio Planning and Zoning Law (2000) 704. Ohio Revised Code § 5709.73 provides that "[a] board of township trustees may, by unanimous vote" adopt a resolution which establishes a TIF." Based upon this statutory language, the Court finds that the Trustees had the discretion to revoke the TIF. Moreover, as this Court has previously recognized, the Tax Injunction Act of 1937, 28 U.S.C. § 1341 bars this Court from enjoining or restraining the operation of the TIF because White Oak had a plain remedy in state court by which to challenge the TIF. *Moss v. Columbus Bd. of Educ.*, 2001 WL 1681117, *8 (S.D.Ohio Sept. 27, 2001) (explaining that the Tax Injunction Act reflects a "fundamental principle of comity between federal courts and state governments" that applies in the case of a § 1983 challenge to the administration of a state tax matter), *citing Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 102 (1981).

White Oak also maintains that it has a substantive due process right based upon Defendants' attempt to vacate a portion of the access road to the Property. The Court finds that any analysis of this claim is unnecessary because it is undisputed that this measure was never taken.

Finally, White Oak claims that Defendants denied their substantive due process rights by holding private meetings outside the public meetings and failing to follow their own procedures. While it is not clear from the record which procedures were being followed, a clear set of procedures, discussed above, was set forth in the Zoning Resolution. White Oak has not alleged that it was unaware of these procedures, or thwarted from following these procedures. Therefore, the Court finds that White Oak cannot claim a liberty or

property right based on procedures that it did not comply with itself. In addition, White Oak has not pointed to any caselaw which establishes a substantive due process right in having all discussions between township officials made a part of a public record.

In addition, the Court finds that Bolendar's participation in the decision to reject White Oak's proposal, in and of itself, does not create a substantive due process violation. The Court finds White Oak's citation to *Wilkerson v. Johnson*, 699 F.2d 325 (6th Cir. 1983) misplaced. There, the Sixth Circuit explained: "The regular and impartial administration of public rules governing these interests, as required by due process, prohibits the subtle distortions of prejudice and bias as well as gross governmental violations exemplified by bribery and corruption and the punishment of political and economic enemies through the administrative process." *Id.* at 328, *citing Gibson v. Berryhill*, 411 U.S. 564, 578-79 (1973) (procedural due process violated by Alabama State Board of Optometry because those "with substantial pecuniary interests in legal proceedings should not adjudicate those disputes"). However, in *Wilkerson*, there was no question that the plaintiff had a liberty interest in the barbershop license. Here, White Oak has failed to establish that it has either a liberty or property interest in the approval of its Proposal.

Based on the foregoing, the Court finds that White Oak is not entitled to summary judgment on its substantive due process claim, and instead, Defendants are entitled to dismissal of this claim.

### 2.     Procedural Due Process

"Procedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest." *Warren v. City of Athens*, 411 F.3d 697, 708 (6th Cir. 2005). Defendants make

several arguments which the Court must address before addressing the merits of White Oak's claim.

### a.  Inadequacy of state processes

Defendants argue that White Oak has failed to plead and prove the inadequacy of state or administrative processes and remedies.  White Oak responds that the requirement of pleading and proving inadequacy of state remedies only applies when the due process violation is the result of random and unauthorized conduct.  White Oak explains that it complains of conduct pursuant to established state procedure.

When a state employee's unauthorized, random acts deprive a person of property, the state employee's acts do not violate "the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981).  Therefore, a section 1983 plaintiff alleging a procedural due process violation must plead and prove "the inadequacy of state processes, including state damage remedies to redress the claimed wrong."  *Mitchell v. Fankhauser*, 375 F.3d 477, 482 (6th Cir. 2004), *citing*, *Vicory v. Walton*, 721 F.2d 1062, 1063 (6th Cir. 1983).  White Oak's procedural due process claim is not based upon the unauthorized, random acts of a state employee, and therefore it was not required to plead and prove the inadequacy of state or administrative processes and remedies.

### b.  Ripeness

While White Oak has not alleged a claim for just compensation pursuant to the Fifth

Amendment, Defendants argue that White Oak has referenced such a claim.[11]

In *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, the Supreme Court declared that "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." 473 U.S. 172, 195 (1985). If a plaintiff has not pursued available state remedies, the case is not ripe because "the State's action . . . is not 'complete' until the State fails to provide adequate compensation for the taking." *Id.*

The Sixth Circuit has explained: "Where a procedural due process claim occurs alongside a takings claim, we have focused on the circumstances of the specific case-and particularly the issue of when the alleged injuries occurred-before deciding whether to apply *Williamson County* to both claims." *Braun*, 519 F.3d at 572, *citing Bigelow v. Michigan Dep't of Natural Resources*, 970 F.2d 154, 159 (6th Cir. 1992) ("The plaintiffs' procedural due process claim is ancillary to this main issue; they simply assert that they were not given an effective opportunity to defend their fishing rights before they were taken. There was thus no 'instantaneous infliction of a concrete injury.' ") (internal citation omitted). Accordingly, in *Nasierowski v. Sterling Heights*, where the plaintiff challenged the local government's action of rezoning his property without first giving him either notice of the change or a hearing, the Sixth Circuit held that his procedural due process claim was "instantly cognizable in federal court without requiring a final decision on a proposed development from the responsible municipal agency." 949 F.2d 890, 894 (6th Cir. 1991).

---

[11]There is no indication in the Record that White Oak has pursued a takings claim in state court either.

As the Sixth Circuit recently explained in *Braun v. Ann Arbor Charter Township*, *Nasierowski* is distinguishable from a claim based on a refusal to rezone:

> The injury in *Nasierowski* was complete the instant he did not receive notice or a hearing. Thus, the plaintiff in *Nasierowski* was seeking the very opportunity to have a hearing, which undoubtedly occurred in the instant case, and not a declaration that the state action constituted a taking. Here, the thrust of the plaintiffs' due process claim is that the Township's refusal to rezone their property was a taking, one resulting from a policy bias (evidenced by the request for more information) against low-income housing proposals. Importantly, if the plaintiffs were to succeed in their state-court takings claim, no procedural due process injury would likely exist.

519 F.3d at 572.

The Court recognizes that White Oak has not alleged a taking claim. However, such a claim can be found alleged implicitly in a complaint:

> Although Plaintiffs' complaint does not cite the Fifth Amendment as a basis for relief, it alleges: "The Board has destroyed Plaintiffs' value of the Richardson Property to such an extent that the Board's action constitutes a taking of Plaintiffs' property. Plaintiffs are entitled to compensation in the amount of the diminution in the value of the Richardson Property as a result of the Board's actions." Thus, while Plaintiffs' complaint frames the Board's actions as violations of due process and equal protection, the injury of which Plaintiffs complain and the relief they seek concern rights guaranteed by the Takings Clause and the Just Compensation Clause of the Fifth Amendment.

*J-II Enterprises, LLC v. Board of Com'rs of Warren County, Ohio*, 2005 WL 1285640, *1 (6th Cir. May 18, 2005) (unpublished). White Oak has been careful to not make such allegations in its Complaint, but the Court finds that White Oak has not alleged a "pure" due process violation. White Oak's procedural due process claim is based upon Defendants' failure to approve White Oak's Proposal, either by adopting White Oak's proposed interpretation of the Intensity of Use Provision, amending the Zoning Resolution to include multiple-family dwellings within a Residential District, or by adopting PUD zoning. The Court finds that such claims would be ancillary to any taking claim that White Oak may

have, and White Oak would not be permitted to bypass *Williamson County's* ripeness requirement if it had in fact brought a takings claim. However, the Court finds that even assuming *arguendo* that White Oak's procedural due process claim is ripe, Defendants are entitled to summary judgment because White Oak has not shown a protected property interest.

### c.    Merits of Procedural Due Process claim

To establish a procedural due process violation, a plaintiff must demonstrate that: (1) it possessed a constitutionally protected property or liberty interest; (2) it was deprived of that interest; and (3) the state did not afford it adequate procedural rights prior to depriving it of that interest. *Taylor Acquisitions, L.L.C. v. City of Taylor*, 2009 WL 415993, *3 (6th Cir. Feb. 19, 2009) (slip op), *citing Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).

The Court finds that White Oak has not established a constitutionally protected property or liberty interest. White Oak relies primarily on *Nasierowski*. In *Nasierowski*, the Sixth Circuit held that where a landowner's liberty interests will be deprived by the passage of an amendment to a zoning ordinance, notice and an opportunity to be heard are constitutionally required. 949 F.2d at 896. However, in *Braun v. Ann Arbor Charter Township*, the Sixth Circuit distinguished the rezoning of existing property in *Nasierowski*, from the property right in a future, rezoned land use. 519 F.3d at 573. In that instance, the court explained that "an individual 'must point to some policy, law, or mutually explicit understanding that both confers the benefit[ ] and limits the discretion of the City to rescind the benefit.'" *Id., quoting R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 435 (6th

Cir. 2005). White Oak has not made any such showing here.

White Oak also complains that Defendants did not follow their own procedures for Zoning Certificates. The Sixth Circuit has held that processes mandated by municipal ordinances or state law are insufficient to establish a property interest. *Chandler v. Village of Chagrin Falls*, 2008 WL 4523585, *5 (6th Cir. October 8, 2008) (unpublished), *citing Richardson v. Twp. of Brady*, 218 F.3d 508 (6th Cir. 2000). In *Richardson v. Township of Brady*, the plaintiff claimed violations of his procedural due process rights resulting from the township's failure to follow explicit procedures for amending an animal-unit ordinance which effectively limited the number of swine he could have on his property. 218 F.3d 508, 511-12 (6th Cir 2000). The plaintiff argued either that "the procedures used to deprive him of his property interest in the text amendment or "interpretation" were inadequate (because unacceptably slow), or that he has a property interest in having the Township follow through with its procedures." *Id.* at 517. The Sixth Circuit found that the plaintiff could not maintain a procedural due process claim on either theory. *Id.*

Because White Oak has not shown that it possessed a constitutionally protected property or liberty interest, the Court concludes that White Oak is not entitled to summary judgment on its procedural due process claim, and instead, Defendants are entitled to judgment.

### E. Civil conspiracy

In the Complaint, White Oak brings claims of conspiracy under both state and federal law.

White Oak brings its claim of conspiracy pursuant to 42 U.S.C. § 1983.[12]   To succeed on a civil conspiracy claim, a plaintiff must show "that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985).

"Rarely in a conspiracy case will there be direct evidence of an express agreement among all the conspirators to conspire, [therefore,] circumstantial evidence may provide adequate proof of conspiracy."  *Weberg v. Franks*, 229 F.3d 514, 528 (6th Cir. 2000). However, "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).  In response to Defendants' Motion for Summary Judgment, White Oak does nothing more than state that Defendants conspired to deprive it of its property and to rescind the TIF district.  These unsupported statements are insufficient to support a claim for civil conspiracy under section 1983.  For that reason, Defendants are entitled to summary judgment on White Oak's claim for civil conspiracy under federal law.

---

[12]The Sixth Circuit has recognized a section 1983 conspiracy claim. *See Macko v. Bryan*, 641 F.2d 447, 449-50 (6th Cir.1981), *citing Dennis v. Sparks*, 449 U .S. 24 (1980).  In its Complaint, White Oak also based its claim upon section 1985(3), which provides a means of redressing a conspiracy to deprive an individual of rights guaranteed under the Constitution. However, to succeed under section 1985(3) a plaintiff must demonstrate "some racial, or perhaps otherwise class-based animus behind the conspirators' action."  *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).  White Oak has not alleged, or proven, it was a member of a "discrete and insular" minority which is accorded "special protection under the Equal Protection Clause because of inherent personal characteristics."  *National Communication Systems, Inc. v. Michigan Pub. Serv. Comm'n*, 789 F.2d 370, 374 (6th Cir.), *cert. denied*, 479 U.S. 852 (1986).

Therefore, only White Oak's claim of civil conspiracy under Ohio law remains. Though 28 U.S.C. § 1367 does confer supplemental jurisdiction upon the Court, thus allowing it to hear this state law claim, the Court may decline to exercise jurisdiction over the claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Though it is not necessary to dismiss the state law claim after all of the federal law claims have been dismissed, *see Musson Theatrical, Inc. v. Federal Express Corp*., 89 F.3d 1244, 1254 (6th Cir. 1996), the Court should consider factors such as "judicial economy, convenience, fairness, and comity," when deciding whether to decline to exercise supplemental jurisdiction over the remaining state law claim. *See id.* (*citing Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 98 L. Ed. 2d 720, 108 S. Ct. 614 (1988)). In considering these factors, the Court declines to exercise jurisdiction over White Oak's claim for civil conspiracy under Ohio law, and Defendants are entitled to dismissal of this claim. This dismissal is without prejudice.

### F.   Ohio Revised Code § 519.02

White Oak also brings a claim based upon section 519.02 of the Ohio Revised Code. The Court declines to exercise jurisdiction over this claim for the same reasons stated above. Accordingly, White Oak's Second Motion for Summary Judgment is denied as to its claim under Ohio Rev. Code § 519.02, and Defendants are entitled to dismissal. However, such dismissal shall be without prejudice.

## III.   CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that:

1.      Defendants' Motion for Judgment on the Pleadings (Doc. 8) is **GRANTED**;

2. Plaintiff's First Motion for Summary Judgment (Doc. 22) is **DENIED**;

3. Plaintiff's Second Motion for Partial Summary Judgment (Doc. 44) is **DENIED**;

4. Defendants' Motion for Summary Judgment (Doc. 51) is **GRANTED**;

    a. Plaintiff's claims based upon a violation of Ohio Revised Code 519.02 and civil conspiracy under Ohio law are dismissed without prejudice;

    b. All other claims shall be dismissed with prejudice; and

5. This matter is hereby **CLOSED** and **TERMINATED** from the docket of this Court.

**IT IS SO ORDERED.**

_/s/ Michael R. Barrett_
Michael R. Barrett, Judge
United States District Court